OPINION. Rice, Judge: This case presents the question of whether the sales price received by partners for their interests in a partnership was, in fact, received for such interests, or whether all or some part of such sales price represented compensation for services because the sale was inextricably linked with the employment of the partners by the buyer of their interests. In support of his determination that three-quarters of the sales price represented compensation for services, the respondent argues that the petitioners and N. B. C. simply carved up a total sum of some $2,500,000 as best suited their purposes from the standpoint of tax consideration; that the capital asset, in the form of the partnership interests, which was sold did not, in fact, have a value in excess of one-quarter of a million dollars; and, that anything allegedly paid for that asset in excess of such amount was actually additional compensation for services. In short, the respondent based his determination on the familiar rule that for tax purposes the form in which the parties cast a particular transaction may be ignored if the substance of their dealings was, in fact, different from the way they would have it appear. Higgins v. Smith, 308 U. S. 473 (1940); Gregory v. Helvering, 293 U. S. 465 (1935). Petitioners, on the other hand, argue that the respondent was not justified in reforming bona fide contracts entered into between unrelated parties dealing at arm’s length; that the transactions in question were accurately reflected by the agreements which the parties reached,; that the partnership interests did, in fact, have a fair market value of $1,000,000; and that the respondent’s determination to the contrary is arbitrary and without foundation in fact. The issue raised is essentially one of fact, and we agree with the petitioners that no part of the $1,000,000 which they received from the sale of their partnership interests represented compensation for services or gains and profits otherwise taxable to them as ordinary income. The significant facts in this record are that the two major broadcasting networks, completely independent of each other, arrived at a valuation of $1,000,000 for the partnership interests in question, and offered such sums in sealed bids to the petitioners for such interests. Ordinarily, when an asset is sold under such circumstances, the bid price establishes its fair market value, and we find no facts here which would except this case from the general rule. Aside from irrelevant factual dissimilarities, this case presents essentially the same question as was decided by the Court in Jack Benny, 25 T. C. 197 (1955). In both cases the property in question was sold in an arm’s-length transaction and the price offered there and the bids made here established the fair market value of the property to the broadcasting network which made the purchase. Under such circumstances, neither the respondent nor this Court has any authority to substitute its judgment for that of the parties. We therefore conclude, as we did in Jack Benny, supra, that the price which was received for the asset represented its fair- market value, and that no part of such sales price represented compensation for personal services. We note also that the compensation which the petitioners here received for their services after the sale was greater than the amounts received before. In concluding that the sealed bids of $1,000,000 represented the true fair market value of the partnership interests which were sold,[1] we are aware that petitioners were attempting to cast the transaction in such a way that they would be entitled to capital gains treatment on the sales price. The record also shows that after the switch of the “Amos ’n Andy” show and other popular radio programs, N. B. C. and C. B. S. were also fully aware of the intended tax consequences of the sale as it affected Marx and Guedel; and understood that one of the principal reasons for a star to sell his show was to receive a substantial sum of money which would be taxable at capital gains rates. However, it has long been recognized that a taxpayer may decrease the amount of what otherwise would be his taxes, or altogether avoid them by any means which the law permits. Commissioner v. Tower, 327 U. S. 280 (1946); Gregory v. Helvering, supra; Jack Benny, supra. By amended answer the respondent asked for increased deficiencies based on allegations to the effect that no part of the $1,000,000 which the petitioners received was taxable as capital gains. He first argues that the partnership interests, regardless of fair market value, were not held by the petitioners for a period of 6 months. That argument is based primarily on his contention that the “Memorandum of Partnership Agreement” which the petitioners signed on April 21, 1950, evidenced the formation by them of a new partnership commencing on December 21,1949; and secondly, that the sale of partnership interests was finally consummated on May 27, 1950, when petitioners and the president of N. B. C. shook hands on the deal. We do not agree with that argument. The memorandum of agreement which the petitioners signed on April 21, 1950, specifically stated that such memorandum confirmed an understanding between them “creating and/or continuing the partnership between them.” We think that memorandum reflects only a readjustment by the petitioners of their respective interests in an existing partnership, rather than the creation of an entirely new partnership. In addition, we think the evidence clearly establishes that the final sale of partnership interests was not consummated until the contracts were signed on July 26, 1950. The bid of N. B. C. contained the statement that it was contingent upon the parties’ agreement on all provisions which were to be incorporated in definitive written agreements and was also contingent upon the agreement of DeSoto to switch the program from C. B. S. to N. B. C. We think those were real contingencies and that, until they were resolved, no final sale was consummated. See Lucas v. North Texas Co., 281 U. S. 11 (1930). So, even if we assume that Marx and Guedel entered into an entirely new partnership agreement as of December 21, 1949, their interests therein were held for a period of more than 6 months, since the sale was not consummated until the end of July 1950. The respondent also argued that the partnership interests did not include the so-called literary property which he says was a separate asset owned by the partners, and that the petitioners actually sold partnership assets rather than partnership interests; and that the asset sold, namely the literary property, was not a capital asset within the meaning of the statute because it was property held for sale to customers in the ordinary course of business. It was incumbent upon respondent to prove those allegations since he raised them by amended answer. Not only did he fail in that burden, but, on the contrary, we think this record clearly demonstrates that the literary property belonged to the partnership. The intent and purport of the sales contracts were to convey the literary property as a part of the partnership interests and the contracts contained the partners’ warranty that it was. We therefore reject such theory and hold that the $1,000,000 received by petitioners is taxable as a capital gain. Decisions will be entered under Bule 50. The respondent introduced no evidence as to such value and called only one witness who did nothing but identify certain documents and records from the files of N. B. C.